OPINION OF THE COURT
Frederick J. Marshall, J.
Adult plaintiffs, Guy Capitano and Linda Capitano, have moved to compel defendant Ford to produce certain documents known as “suspension orders.” Plaintiffs contend that the requested documents are relevant because they may lead to the discovery of admissible evidence or, in the alternative, may show that Ford has intentionally or negligently allowed the destruction of certain relevant documents and may be subject to spoliation sanctions.
Ford contends that the suspension orders are not relevant and, even if they are, are protected by the attorney-client privilege and/or protected as attorney work product.
Because it produces millions of pages of documents dealing with a myriad of subjects, Ford has enacted a record management procedure in order to define, categorize and provide for the retention of documents related to its business. Generally, documents are destroyed on an ongoing basis pursuant to the record management procedure. However, if litigation is threatened or pending, or if other special circumstances exist, in-house counsel for Ford will issue a “suspension order” which suspends the normal document retention policy and directs those in charge of document retention and destruction to set aside and retain certain documents pursuant to the “suspension order.”
Plaintiffs have asked that certain “suspension orders” be produced in light of the fact that Ford has been unable to produce certain documents which may be relevant to this litigation. Ford claims that the unavailability of these documents is beyond its control. It has made a diligent, good faith effort to find the documents and simply cannot do so. The number of documents it is unable to produce is relatively small compared to the total number of documents already produced by Ford. Plaintiffs claim that if they have access to the “suspension orders” they will be able to determine if the documents in question were intentionally or negligently destroyed, or perhaps secure information which may lead to the discovery of the missing documents. In addition, should they discover information indicating *563 that the documents have been intentionally or negligently destroyed, plaintiffs claim they should be able to pursue spoliation sanctions.
This court agrees that the “suspension orders” may lead to the production of admissible evidence and are, therefore, relevant.
The court must now turn to Ford’s claim that the “suspension orders” are protected by the attorney-client privilege or attorney work product doctrine. Ford has requested that this court apply Michigan law as opposed to New York State law in determining whether either attorney-client privilege or attorney work product exceptions apply. In reviewing both Michigan law and New York State law, it is clear that there is no conflict between the two. As such, the court will apply New York State law in assessing whether either doctrine applies. (Excess Ins. Co. v Factory Mut. Ins. Co., 2 AD3d 150 [1st Dept 2003].)
CPLR 4503 recites, in pertinent part,
“[ujnless the client waives the privilege, an attorney or his or her employee, or any person who obtains without knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action.”
According to the affidavit of Alan L. DeGraw, Esq., in-house counsel for Ford Motor Company, “suspension orders” are “communications (a) that are issued by attorneys in Ford’s Office of the General Counsel in connection with certain anticipated or pending litigation or administrative proceedings and (b) that identify attorney-selected categories of documents required to be maintained beyond periods set out pursuant to Ford’s records management program.” (See exhibit A attached to affidavit of Robert G. Scumaci, Esq., sworn to Nov. 28, 2006.) Mr. DeGraw further avers that the “suspension orders” which the plaintiffs now demand were issued by attorneys for Ford in connection with, or in anticipation of, litigation involving fuel systems on Ford trucks. He further states that the “suspension orders” are confidential communications between the attorneys and representatives of Ford, are disseminated to only those employees who deal with Ford’s record management program and, lastly, contain the warning that the “suspension orders” are *564 privileged and confidential and that dissemination should be limited to persons working at Ford on a need-to-know basis.
Plaintiffs rely on the deposition testimony of a Ford attorney who, in an unrelated case, stated that “suspension orders” are posted on Ford’s intranet communications system and are available to all employees. Therefore, plaintiffs claim that the attorney-client privilege, if any, is forfeit.
This court is satisfied that the “suspension orders” in question are privileged communications from attorney to client which relate to legal advice given by counsel to client and, as such, are protected as attorney-client privileged documents pursuant to CPLR 4503.
The court does not reach the question of whether the “suspension orders” are attorney work product.
Therefore, it is, after due consideration, ordered that the plaintiffs’ motion is, in all respects, denied; and it is further ordered that Ford’s counsel shall provide a detailed privilege log with respect to the “suspension orders” at issue within 20 days of the date of this decision, unless Ford’s counsel has previously supplied said privilege log.